**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBIN RANDLER,** | : | **CIVIL ACTION NO. 1:11-CV-474** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **KOUNTRY KRAFT, INC., t/d/b/a Kountry Kraft Custom Cabinetry,** | : | |
| | : | |
| **Defendant** | : | |

**MEMORANDUM**

This is a civil action filed by plaintiff Robin Randler ("Randler") alleging numerous violations of federal and state law following the termination of her employment with defendant Kountry Kraft, Inc., t/d/b/a Kountry Kraft Custom Cabinetry ("Kountry Kraft"). Presently before the court is a partial motion (Doc. 6) to dismiss Counts IV and VI of Randler's complaint (Doc. 1) pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the court will grant the motion in part and deny it in part.

## I. **Background**[1]

This case arises out of numerous incidents that occurred between 2005 and February 2010 while Randler was employed at Kountry Kraft. Kountry Kraft is a Pennsylvania corporation engaged in the manufacture and sale of cabinetry, doors and appurtenant facilities. (Doc. 1 ¶¶ 3, 4). Randler began her employment at Kountry Kraft on or about September 4, 2001, as a door sander. (Id. ¶ 4). Kountry Kraft promoted Randler to lead door sander in 2004. (Id. ¶ 14). In this position she performed a variety of functions such as readying doors and cabinetry for assembly and sale, until her termination on February 2, 2010.[2] (Id.)

Kountry Kraft has an employee handbook containing a number of policies on a variety of subjects including, but not limited to: nepotism, sexual harassment, email, discipline, and termination. (Id. ¶ 16). Randler alleges that these policies were not enforced. (Id.) According to Randler, Kountry Kraft employees were not advised or trained on how to address claims of harassment or discrimination. (Id. ¶ 7). From 2005 until her termination in February, 2010, Randler claims that she was subjected to various forms of sexual harassment and lewd pranks by Kountry Kraft

---

[1] In accordance with the standard of review for a motion to dismiss pursuant to Rule 12(b)(6), the court will present the facts as alleged in the complaint. See infra Part II. However, those portions of the complaint which consist of no more than legal conclusions or a formulaic recitation of the elements of a cause of action have been disregarded. Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009); Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010).

[2] Randler alleges she was constructively discharged in November 2009. (Id. ¶ 14).

agents, managers, and servants including, but not limited to: (1) a maintenance manger placing pubic hair on her workstation; (2) a co-worker presenting her with a pair of crotchless shorts; (3) coworkers placing depictions of a penis, breasts, and a vagina on her workstation; and (4) a plant manager throwing gum at Randler's chest and winking. (Id. ¶¶ 18, 19, 20). Randler avers that these events caused her extreme embarrassment, humiliation, and mental distress which manifested as physical illness. (Id. ¶ 23).

Randler approached her supervisors about the incidents, but she alleges that they took no action to remedy the harassment. (Id. ¶¶ 24, 25). Instead, Randler claims that after complaining about the harassment, Kountry Kraft retaliated against her by reducing her working hours and requiring her to make up work for other employees who could not properly perform their jobs, which ultimately led to her constructive discharge in November 2009. (Id. ¶¶ 27, 28).

Randler further avers Kountry Kraft violated its internal policies on nepotism by treating family members of management and other key employees differently than Randler. (Id. ¶ 29). Kathy Kellenberger ("Kellenberger"), the wife of a key Kountry Kraft employee and a co-worker of Randler, purportedly initiated a physical altercation with Randler. (Id. ¶¶ 30, 31). Randler complained to Kountry Kraft management about Kellenberger's actions, but Randler claims that only she was disciplined. (Id. ¶ 31). On February 2, 2010, Kountry Kraft terminated Randler's employment. (Id. ¶ 32). Randler contends that her termination was in retaliation for her complaints of harassment and discrimination. (Id. ¶ 34).

On February 14, 2011, Randler filed suit in the United States District of the Middle District of Pennsylvania. (Doc. 1). Randler's alleges six causes of action in her complaint: (1) sexual harassment in violation of Title VII, 42 U.S.C. § 2000e-2, and the Pennsylvania Human Relations Act ("PHRA"), 43 PA. CONS. STAT. 955; (2) retaliation; (3) violation of the PHRA, 43 PA. CONS. STAT. § 951, et seq.; (4) negligent supervision; (5) intentional infliction of emotional distress; and (6) wrongful discharge. On May 17, 2011, Kountry Kraft filed the instant motion (Doc. 6) to dismiss. Kountry Kraft asserts that Randler has failed to adequately plead her negligent supervision and wrongful discharge claims (Counts IV, and VI). (Doc. 6 ¶¶ 2, 3). The motion has been fully briefed and is ripe for disposition.

## II. Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached

to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1947 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. at 1950 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, --- U.S. ---, 129 S. Ct. at 1949. When the complaint fails to present a *prima facie* case of liability, however, courts should generally grant leave to amend before

dismissing a complaint. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

## III. Discussion

### A. Count IV: Negligent Supervision

Kountry Kraft asserts that Count IV of Randler's complaint is preempted by the PHRA because Randler's negligent supervision claim is based entirely on the underlying sexual harassment allegations. (Doc. 7, at 3-4). It is settled that the PHRA preempts common law negligent supervision claims against employers when the "claims arise from and form an integral part of the PHRA-prohibited discriminatory conduct." Watkins v. Rite Aid Corp., No. 4:06-CV-00299, 2006 WL 2085992, at *4 (M.D. Pa. July 25, 2006) (collecting cases); see also Wolk v. Saks Fifth Ave. Inc., 728 F.2d 221 (3d Cir. 1984); WarmKessel v. East Penn Mfg., No. 03-02941, 2005 WL 1869458, at *8 (E.D. Pa. July 28, 2005). McGovern v. Jack D's, Inc., No. Civ. A. 03-5547, 2004 WL 228667, at *7 (E.D. Pa. Feb. 3, 2004) (noting that "unless a plaintiff can offer some other independent set of facts to support a claim not otherwise covered by the PHRA, such a claim is subject to preemption."); 43 PA. CONS. STAT. § 962.

In the instant case, Randler's negligent supervision claim clearly arises from her sexual harassment allegations:

> Kraft Cabinetry knew, or in the exercise of ordinary care, should have known of the necessity for exercising control over its supervisors, managers, and its employees, because it had prior notice of sexual harassment complaints raised by Plaintiff and management regularly witnessed inappropriate conduct including birthday parties with penis

> cakes, heard lewd jokes, observed improper emails and other such activities, which would have prevented Plaintiff from suffering from a hostile environment.

(Doc. 1 ¶ 49). Randler concedes that she cannot pursue both her negligent supervision claim and her PHRA claims at trial. (See Doc. 11, at 2-3). Randler contends, however, that at the pleading stage it is appropriate to plead alternative counts and that only through discovery can she determine which claim is better suited for recovery. (See id.). Federal Rule of Civil Procedure 8(d)(3) states that "[a] party may state as many separate claims or defenses as it has, regardless of consistency" see FED. R. CIV. P. 8(d)(3), and Federal Rule of Civil Procedure 18 allows a party to join "independent or alternative claims," see FED. R. CIV. P. 18, however, the issue here is preemption, not inconsistent or alternative claims. Randler clearly invoked the PHRA by explicitly pleading it in her complaint (see Doc. 1, Counts I and III), therefore she cannot simultaneously plead a state law tort action arising out of the same conduct.[3] Thus, Kountry Kraft's motion to dismiss Count IV is granted. The court will grant Randler leave to amend her complaint pursuant to Federal Rule of Civil Procedure 15(a)(2), to assert her negligent supervision claim and drop her PHRA claim within thirty (30) days of the date of this memorandum and order.[4]

---

[3] The court will not address whether preemption would still bar Randler's negligent supervision claim should she voluntarily dismiss her PHRA claims. The parties have neither raised nor briefed that issue.

[4] The court notes that fact discovery has been ongoing for over four months. Randler should be in a position to determine which cause of action to pursue.

**B. Wrongful Discharge: Count VI**

Kountry Kraft asserts that Count VI of Randler's complaint should be dismissed because Randler has failed to sufficiently plead a common law cause of action for wrongful discharge. (Doc. 7, at 5-6). Pennsylvania adheres to the employment at-will doctrine, allowing employers to terminate employees "for any reason or for no reason" unless a written contract exists between the parties. Shick v. Shirey, 716 A.2d 1231, 1233 (Pa. 1998) (citation and quotations omitted); Hershberger v. Jersey Shore Steel Co., 575 A.2d 944, 946 (Pa. Super Ct. 1990) ("at-will employment environment is the norm . . . thus, an employee can be terminated for good reason, bad reason, or no reason at all" (citing Henry v. Pittsburgh & Lake Erie Railroad Co., 21 A. 157 (Pa. 1891))). An employee may bring a common-law wrongful termination action of an at-will employment relationship only if he or she can demonstrate the termination violates a clear mandate of public policy. See Clay v. Advanced Computer Application, 559 A.2d 917, 918 (Pa. 1989); Hershberger, 575 A.2d at 946; see also Sola, 804 F.2d at 42. Randler contends that she has stated a viable wrongful discharge cause of action, asserting both a Pennsylvania public policy against nepotism and an applicable Kountry Kraft anti-nepotism policy. (Doc. 11, at 3, 4).

The public policy exception to the employment at-will doctrine is narrowly applied to "significant and recognized public policies." Yetter v. Ward Trucking Corp., 585 A.2d 1022, 1026 (Pa. Super Ct. 1991). Sources of clear mandates of public policy include: "legislation; administrative rules, regulation, or decision; and

judicial decision." Id. (citation omitted); see also Murray v. Gencorp, Inc., 979 F. Supp. 1045, 1047-48 (E.D. Pa. 1997). Pennsylvania courts have noted that exceptions to the at-will employment doctrine "should be few and carefully sculpted so as to not erode an employer's inherent right to operate its business as it chooses."[5] Rothrock v. Rothrock Motor Sales, Inc., 883 A.2d 511, 516 (Pa. 2005). No Pennsylvania court has ever recognized nepotism as an exception to the employment at-will doctrine. In fact, nepotism has been employed as a successful defense to employment discrimination claims. See, e.g., Green v. Edward J. Bettinger Co., 608 F. Supp. 35 (E.D. Pa. 1984) judgment aff'd, 791 F.2d 917 (3d Cir. 1986) (holding that an employer did not violate an anti-discrimination statute by grooming his son to take over the business); see also 1 SUMM. PA. JUR. 2D TORTS § 12:38.

In the instant case, Randler notes that Pennsylvania agencies, such as the Pennsylvania Gaming Control Board, the Pennsylvania Civil Service Commission, and the Pennsylvania Governor's Office of Administration, have internal policies prohibiting nepotism. (Doc. 11, at 3). The internal employment policies of select Pennsylvania governmental agencies, however, do not constitute a clear mandate of public policy. The court finds that it is unlikely that the Pennsylvania Supreme

---

[5] The narrow exceptions to the employment at-will doctrine include: (1) termination for filing a workers' compensation claim, see Shick v. Shirey, 716 A.2d 1231 (Pa. 1998); (2) termination for filing an unemployment compensation claim, see Highhouse v. Avery Transportation, 660 A.2d 1374 (Pa. Super Ct. 1995); and (3) termination for refusal to submit to a polygraph test, see Kroen v. Bedway Security Agency, 633 A.2d 628 (Pa. Super Ct. 1993).

Court will expand the public policy exception to encompass termination based upon nepotism without a significantly greater showing of an undisputable public policy. See Weaver v. Harpster, 975 A.2d 555, 563 (Pa. 2009) (noting that a court may declare what is in accord with public policy "only when a given policy is so obviously for or against public health, safety, morals, or welfare that there is a virtual unanimity of opinion in regard to it" (citation and quotations omitted)). Therefore, Randler's complaint fails to state a viable public policy exception to Pennsylvania's employment at-will doctrine.

Randler also asserts, however, that by terminating her, Kountry Kraft violated the anti-nepotism policy found in its employee handbook. (Doc. 11, at 3). The court construes this as an argument that the employee handbook created an employment contract between Randler and Kountry Kraft. In Pennsylvania, a "very strong presumption exists of at-will employment relationships and [the] level of proof required to overcome this presumption is arduous." Ritter v. Pepsi Cola Operating Co. of Chesapeake and Indianapolis, 785 F. Supp. 61, 63 (M.D. Pa. 1992). An employee handbook can be used to overcome the presumption if a reasonable person in the employee's position would interpret the handbook as "evidencing the employer's intent to supplant the at-will rule." Scott v. Extracorporeal, Inc., 545 A.2d 334, 337 (Pa. Super Ct. 1988) (citation and quotations omitted). Although inartfully crafted, Randler's complaint alleges sufficient facts at this stage—the existence of an employee handbook with policies prohibiting nepotism, her allegations of disparate treatment, and her termination from Kountry Kraft on

February 2, 2010—to show a "plausible claim for relief" for wrongful termination. Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. at 1950 (citing Twombly, 550 U.S. at 556); see also (Doc. 1 ¶¶ 16, 56-63). Therefore, the court will deny Kountry Kraft's motion to dismiss Count VI of Randler's complaint.

## IV. Conclusion

For the foregoing reasons, the partial motion to dismiss is granted in part and denied in part.

An appropriate order follows.

S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated: October 24, 2011

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBIN RANDLER,** | : | **CIVIL ACTION NO. 1:11-CV-474** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **KOUNTRY KRAFT, INC., t/d/b/a Kountry Kraft Custom Cabinetry,** | : | |
| | : | |
| **Defendant** | : | |

**ORDER**

AND NOW, this 24th day of October, 2011, upon consideration of the partial motion to dismiss (Doc. 6), filed by defendant Kountry Kraft, Inc., t/d/b/a Kountry Kraft Custom Cabinetry, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The partial motion to dismiss (Doc. 6) Counts IV and VI of plaintiff Robin Randler's ("Randler") complaint (Doc. 1) is GRANTED in part and DENIED in part, as follows:

   a. The motion is GRANTED with respect to count IV of the complaint.

   b. The motion is DENIED in all other respects.

2. Within thirty (30) days of the date of this order, Randler may file an amended complaint reasserting her negligent supervision claim and dropping her PHRA claims.

S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge