**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBIN RANDLER,** | : | **Civil Action No. 1:11-cv-0474** |
| **Plaintiff,** | : | |
| | : | **(Judge Conner)** |
| **v.** | : | |
| | : | |
| **KOUNTRY KRAFT KITCHENS,** | : | |
| **Defendant** | : | |
| | : | |

## MEMORANDUM

Presently before the court is defendant Kountry Kraft Kitchens' ("Kountry Kraft") motion for partial summary judgment (Doc. 32) and plaintiff Robin Randler's ("Randler") cross-motion for summary judgment (Doc. 37). Also before the court is Randler's motion to "strike deposition testimony of Tonya Sholl and specific paragraphs of defendant's reply." (Doc. 48). For the reasons that follow, Kountry Kraft's motion will be granted in part and denied in part, and both of Randler's motions will be denied.

## I. Factual Background[1] and Procedural History

Randler began working at Kountry Kraft in 2001. (Doc. 34 ¶ 1). Randler started her employment sanding cabinets and doors, and, by 2004, had progressed to lead door sander. (Doc. 34 ¶ 3; Doc. 36 ¶¶ 17, 18). Randler remained employed at Kountry Kraft until she was laid-off on January 22, 2010. (Doc. 34 ¶ 31).

---

[1]Given the applicable standard of review, the court will present the facts in the light most favorable to the non-moving party with respect to each motion. See *infra* Part II.

During her time with Kountry Kraft, Randler claims there were numerous instances of inappropriate conduct in the workplace resulting in a hostile work environment. A summary highlighting some of the most egregious conduct follows, much of which Kountry Kraft disputes.

Randler worked with a gentleman named Chris Doney who went by the nickname "Clitty." (Doc. 34 ¶ 7). Randler claims she was uncomfortable with this nickname after Doney informed her that it had a sexual connotation. (Doc. 35 ¶¶ 46-47; Doc. 34-1, at 16:16-17:12). Randler claims she did not complain about her discomfort because management personnel and the president of Kountry Kraft all used this nickname when referring to Doney. (Doc. 34-1, at 18:1-15). Kountry Kraft counters that Randler never voiced discontent about the nickname, and, furthermore, that both Randler and her children referred to Doney by his nickname when they socialized with Doney outside of work. (Doc. 45 ¶ 47). Kountry Kraft also cites to deposition testimony in which co-worker Terry Layser testified that Randler herself once made a sexual gesture to Doney which was related to his nickname. (Id.; Doc. 45, Ex. 4, at 22:13-22).

It is undisputed that, in 2002 or 2003, a co-worker, Shirley Masser, baked a birthday cake in the shape of male genitalia, and an employee brought it into the workplace. (Doc. 34 ¶ 8). Randler claims Masser brought the cake to work (Doc. 35 ¶ 51), but two other Kountry Kraft employees testified that they saw Randler carry the cake into the company building. (Doc. 45 ¶ 51). The parties dispute whether Randler participated in the birthday celebration. (Doc. 36 ¶ 53; Doc. 45 ¶ 53).

Randler avers that she did not report this incident because management saw the cake and participated in the party. (Doc. 34-1, at 22:20-23). It is not disputed that Kountry Kraft managers saw the cake but did not reprimand employees, purportedly because no one complained that the cake offended them. (Doc. 36 ¶¶ 55-56; Doc. 45 ¶¶ 55-56).

In 2005, a co-worker gave Randler a pair of jeans which were cut in the shape of "g-string" underwear, Randler claims she immediately reported this incident to a supervisor, John Strickler. (Doc. 34 ¶ 9; Doc. 42 ¶ 9; Doc. 34-1, at 32:10-33:10). She did not speak to anyone else in management about it. (Doc. 34-1, at 8-10).

In January 2006 and March 2007, fellow Kountry Kraft employees sent lewd pictures and emails to Randler's personal email address and showed her similar pictures and jokes on work computers. (Doc. 34 ¶ 11; Doc. 36 ¶¶ 73-77). Randler claims she did not complain because she assumed the emails came from Michael Shaeffer's[2] email address and, therefore, Kountry Kraft management were involved in the email chain. (Doc. 34-1, at 50:18-51:3). She bases this assumption on the fact that the original email chain stemmed from the email address "KKShaeffer@cox.net" (Doc. 34-1, at 45:15-20), and was forwarded to co-worker, Rick Bauman, (id. at 46:1-9), and subsequently sent to Randler's home email, (id. at 46: 12-17). Furthermore, another sexually explicit email was sent to her that

---

[2]The parties dispute whether Michael Schaeffer was Randler's co-worker or supervisor. (Doc. 34 ¶ 17; Doc. 42 ¶ 17). Regardless, Randler admits that Schaeffer was not a manager in her department. (Pl.'s Ex. A-1, at 42:21-23).

contained the email addresses of both Kountry Kraft's president and her supervisor; thus, Randler claims that reporting the emails would have been futile. (Doc. 34-1, at 62:24-63:15).  In contrast, Kountry Kraft claims that Randler regularly asked Kountry Kraft employees to share sexually explicit jokes with her and asked for the same via email.  (Doc. 45 ¶¶ 73-77).  In March 2007, co-workers placed a pornographic picture related to one of the emails on Randler's workstation.  (Doc. 34 ¶ 13).

Randler claims that co-workers Shirley Massar and Beth Smith would pose a "sexual question of the day" to the workplace staff, including supervisors.  (Doc. 34 ¶ 16; Doc. 34-1, at 103:5-21).  In response, Kountry Kraft cites to deposition testimony where co-workers claim that it was Randler who asked the "sexual question of the day."  (Doc. 45 ¶ 140).

Around June 2008, Michael Schaeffer gave Randler a "mock write-up" that claimed her breasts extended beyond the "pinch point" of a machine.  (Doc. 34 ¶ 17; Doc. 36 ¶ 70; Doc. 34-1, at 42:1-8).  Although Kountry Kraft does not deny that this incident occurred, it is disputed whether a supervisor was notified.  Randler claims that Schaeffer told supervisor Peters about the incident, and that Peters later approached her about it in a joking manner.  (Pl.'s Ex. A-1, at 42, 9:11).  Peters denies having any knowledge of the incident.  (Doc. 36 ¶ 70; Doc. 45 ¶ 70).

In June 2009,[3] Schaeffer gave Randler a note that stated it contained President Obama's pubic hair, and, in fact, did contain a hair of some kind. (Doc. 34 ¶ 18; Doc. 36 ¶¶ 63-64; Doc. 34-1, at 26:3-6). Randler claims she immediately reported this incident to supervisor Kim Shannon. (Doc. 36 ¶ 66; Doc. 34-1, at 26:17-20). Kountry Kraft admits that the note is in Schaeffer's handwriting, but disputes that Schaeffer was a manager or supervisor, or that Randler reported the incident to a supervisor. (Doc. 45 ¶¶ 64-66).

In June 2009, Schaeffer and Shannon allegedly asked Randler if she "knew a woman with a crooked mouth who could give them a blow job."[4] (Doc. 34 ¶ 19; Doc. 34-1, at 27:2-8). From June 2009 through November 2009, Randler claims unidentified co-workers placed figurines in the shape of sexual body parts on her workstation. (Doc. 34 ¶ 20). In response, Kountry Kraft cites to deposition

---

[3]Although not directly disputed, Kountry Kraft states that this incident occurred in June 2009, whereas Randler states it occurred in June 2008. (See Doc. 34 ¶ 18; Doc. 42 ¶ 18). Because one of Kountry Kraft's requests for summary judgment is based on a statute of limitations argument, and because the court, at this stage of the litigation, is required to take the facts in the light most favorable to the non-moving party, the court will accept June 2009 as the relevant date.

[4]Some of these "undisputed facts" are taken directly from Kountry Kraft's statement of undisputed facts in support of its own partial motion for summary judgment. Kountry Kraft's motion asks the court to grant summary judgment for any acts of wrongdoing alleged to have taken place prior to February 6, 2009. However, the court realizes that, in Kountry Kraft's counter-statement of material facts opposing Randler's motion for summary judgment, Kountry Kraft disputes whether some of these incidents actually took place. In light of the court's disposition denying both the statute of limitations argument and Randler's motion for summary judgment, the actual occurrence of these incidents will be a question for the jury.

testimony wherein co-workers claim Randler brought the figurines in and showed them off to fellow employees. (Doc. 45 ¶ 62). In November 2009, a co-worker asked if he could put his head on Randler's breasts. (Doc. 34 ¶ 21). Manager John Strickler threw a gum wrapper at Randler's breasts and winked at her, and Strickler also purportedly told her that one of her male co-workers wanted her in a sexual manner. (Doc. 34 ¶¶ 23, 24; Doc. 34, at 37:17-38:2). Randler also claims two male co-workers "mooned" her at work and that another pulled down his pants in front of her. (Doc. 34 ¶¶ 25-27; Doc. 34-1, at 100:10-12, 101:17-19; 102:3-17).

Randler testified that she never reported these incidents because she was scared she would lose her job if she complained. According to Randler, management personnel, including her supervisor John Strickler, were active participants in the harassment, and many of these mangers were social friends with Kountry Kraft's president. Thus, she felt that reporting the incidents would be futile. (Doc. 34-1, at 31:8-12, 66:18-24).

Kountry Kraft refutes these contentions by citing to deposition testimony in which Randler's co-workers claim she would regularly act in a sexually explicit manner, including, *inter alia*: pulling her pants down in front of fellow employees (Doc. 45 ¶ 126); sticking objects in her pants and shirt to mimic male and female body parts (Doc. 45 ¶ 126); and, placing sawdust covered hands on a male employees buttocks (Doc. 45 ¶ 128). Randler denies these incidents. (Doc. 35 ¶¶ 123-30).

6

Concurrent to these prurient episodes, Randler also experienced difficulties with a co-worker, Kathy Kellenberger, who was married to a Kountry Kraft supervisor. (Doc. 34 ¶ 33; Doc. 36 ¶¶ 100-02, 110-11). Kountry Kraft placed Randler and Kellenberger on alternating schedules due to a significant personality conflict. Randler met with her supervisors to discuss this conflict, but made no mention of her separate concerns of sexual harassment in the workplace. (Doc. 34 ¶¶ 33, 34, 37). Randler claims that, because of Kellenberger's husband's supervisory position within the company, Randler received unfavorable hours and was eventually laid-off. (Doc. 36 ¶ 117). Kountry Kraft claims that Kellenberger and Randler were not treated differently and that their placement on alternating shifts was based solely on the fact that the two women could not work together amicably. (Doc. 45 ¶ 108).

Kountry Kraft asserts that Randler was laid-off in 2010 because of the company's desire to downsize based on its production needs. (Doc. 45 ¶ 112). At the time of Randler's lay-off, Kellenberger had more experience and earned less than Randler. (Doc. 45 ¶¶ 112-13). Prior to Randler's lay-off, supervisor John Strickler had a private conversation with Kellenberger's husband at the Kellenberger residence. This conversation involved the continuing conflict between Kellenberger and Randler, but Kountry Kraft denies that the parties discussed anything related to Randler's employment. (Doc. 45 ¶ 114).

Kountry Kraft provides employees with a handbook, which includes a section explicitly pertaining to sexual harassment. This section states: "If you experience or witness sexual or other unlawful harassment in the workplace, report it

7

immediately to your supervisor.  If the supervisor is unavailable or you believe it would be inappropriate to contact that person, you should immediately contact the Human Resource Department or any other member of management." (Doc. 34 ¶ 36).

In addition, the handbook contains a section which addresses the hiring and retention of relatives:

> The employment of relatives in the same area of an organization may cause serious conflicts and problems with favoritism and employee morale.  In addition to claims of partiality in treatment at work, personal conflicts from outside the work environment can be carried over into day-to-day working relationships.
>
> *      *      *
>
> Although Kountry Kraft has no prohibition against employing relatives of current employees with current employees, we are committed to monitoring situations in which such relationships exist in the same area.  In case of actual or potential problems, Kountry Kraft will take prompt action.  This can include reassignment or, if necessary, termination of employment for one or both of the individuals involved.  Employees in a close personal relationship should refrain from public workplace displays of affection or excessive personal conversation.

(Def.'s Ex. 3, Kountry Kraft, Inc., Employee Handbook, 105 Hiring of Relatives).[5]

On September 7, 2004, Randler received a copy of this handbook and signed an acknowledgment that she had read it.  (Def.'s Ex. 3; Doc. 34 ¶¶ 41, 42).

---

[5]Randler refers to this as Kountry Kraft's "anti-nepotism policy."  (Doc. 36 ¶¶ 33, 34).

On March 14, 2011, Randler sued Kountry Kraft.  (Doc. 1).  In her original complaint, Randler alleged:  (1) sexual harassment in violation of Title VII, 42 U.S.C. § 2000e-2 ("Title VII"), and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 955; (2) retaliation in violation of Title VII and the PHRA, 43 Pa. Cons. Stat. § 951; (3) negligent supervision; (4) intentional infliction of emotional distress; and (5) wrongful discharge.

On May 17, 2011, Kountry Kraft filed a partial motion to dismiss (Doc. 6) Randler's wrongful discharge and negligent supervision claims.  Kountry Kraft claimed that Randler failed to state a proper wrongful discharge claim and that her negligent supervision claim was pre-empted by the PHRA.  (Doc. 7, at 3-4).

On October 25, 2011, the court issued a memorandum and order granting in part and denying in part the motion.  (Doc. 22).  The court denied the motion with regard to the wrongful discharge claim but allowed Randler thirty (30) days to amend the complaint to reassert her negligent supervision claim and dismiss her PHRA claims.

On October 31, 2011, Randler filed an amended complaint.  (Doc. 23).  The only distinction between her original complaint and her amended complaint is the removal of her PHRA claims.[6]  On January 24, 2012, Kountry Kraft filed a partial motion for summary judgment and brief in support, (Docs. 32, 33), and Randler filed

---

[6] Randler failed to remove certain paragraphs in her amended complaint (see Doc. 23 ¶¶ 5, 6, 7, 40), referencing the PHRA.  However, the parties agree that these paragraphs should be stricken from the complaint pursuant to this court's October 25, 2011 Memorandum and Order.  (See Doc. 33, at 17; Doc. 41, at 12).

a motion for summary judgment (Doc. 37), followed by a brief in support on January 25, 2012 (Doc. 38). Both parties have filed opposition briefs (Docs. 41, 46), and Kountry Kraft filed a reply brief (Doc. 47).

On March 8, 2012, Randler also filed a motion and supporting brief to strike the deposition testimony of Tonya Sholl and to strike certain paragraphs in Kountry Kraft's reply brief relating to this testimony. (Docs. 48, 49). On March 20, 2012, Kountry Kraft filed a brief in opposition. (Doc. 50). All motions are now ripe for disposition.

## II. <u>Standard of Review for Cross-Motions for Summary Judgment</u>

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and as to which a party is entitled to judgment as a matter of law. <u>See</u> Fed. R. Civ. P. 56(a). The burden of proof is upon the nonmoving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. <u>Pappas v. City of Lebanon</u>, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); Fed. R. Civ. P. 56(e); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-57 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-89 (1986); <u>see also</u> Fed. R. Civ. P. 56(a), (e). Only if this threshold is met may the cause of action proceed. <u>Pappas</u>, 331 F. Supp. 2d at 315.

In the instant matter, the parties have filed cross-motions for summary judgment. According to the Third Circuit:

> Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.

Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008) (quoting Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)). Each movant must show that no genuine issue of material fact exists; if both parties fail to carry their respective burdens, the court must deny the motions. See Facenda v. N.F.L. Films, Inc., 542 F.3d 1007, 1023 (3d Cir. 2008). When reviewing each motion, the court is bound to view the evidence in the light most favorable to the non-movant. Fed. R. Civ. P. 56; J.S. ex rel. Snyder v. Blue Mountain Sch. Dist., 650 F.3d 915, 925 (3d Cir. 2011).

## III.   Discussion

### A.   Hostile Work Environment and Statute of Limitations

Kountry Kraft argues that it is entitled to partial summary judgment because certain of the alleged acts of harassment are time-barred by the statute of limitations. In addition, Kountry Kraft claims that it is entitled to summary judgment as a matter of law on Randler's retaliation and wrongful discharge claims.[7]

---

[7]Kountry Kraft also seeks summary judgment on Randler's negligent supervision claim based on its defense that the claim is preempted by the PHRA. (See Doc. 46, at 29). The court agrees, see infra Part II.E, and this claim will be

Randler claims she is entitled to summary judgment as a matter of law on all of her claims. Furthermore, Randler claims that she has shown a pervasive and continuing hostile work environment, thereby tolling the statute of limitations.

Title VII of the Civil Rights Act makes it unlawful for an employer "to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Here, Randler claims she was discriminated against on the basis of sex.[8] Id.

Title VII requires plaintiffs to file their complaint with the EEOC or related state agency within 300 days of the alleged action or practice that constitutes illegal discrimination. See 42 U.S.C. § 2000e-5(e)(1); Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101. 104-5 (2002); Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 480 (3d Cir. 1997). Plaintiff filed her charge of discrimination with the EEOC on December 3, 2009. (Doc. 34 ¶ 5; Doc. 42 ¶ 5). Kountry Kraft argues that it cannot be held liable for alleged acts of sexual harassment occurring more than 300 days prior to this date, i.e., before February 6, 2009. (Doc. 33, at 2).

_____

dismissed.

[8]Title VII prohibits two types of sexual harassment, "quid pro quo" and "hostile work environment." See 42 U.S.C. § 2000e et. seq.; Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 751-52 (1998). Quid pro quo sexual harassment, which occurs when submission or rejection of sexual overtures serves as a basis for employment decisions affecting the individual, does not appear to be an issue in the present matter. See Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281-82 (3d Cir. 2000).

Courts, however, do not automatically exclude alleged acts of sexual harassment occurring more than 300 days prior to the filing date when a plaintiff seeks to prove the existence of a hostile work environment, as Randler does here. See Nat'l R.R., 536 U.S. at 115; (Doc. 38, at 3-6). In order to establish a *prima facie* case of a hostile work environment in the context of sexual harassment claims a plaintiff must satisfy the following elements: 1) the employee suffered intentional discrimination because of [her] sex; 2) the discrimination was pervasive and regular; 3) the discrimination detrimentally affected the plaintiff; 4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and 5) the existence of *respondeat superior* liability. Harris v. Forklift Systems, Inc., 510 U.S. 17, 21-22 (1993) West, 45 F.3d at 753; Andrews v. City of Philadelphia, 895 F.2d 1469 (1990), 1482; Cronin, 159 F.Supp.2d at 5-6.

By its nature, sexual harassment usually involves repetitious conduct, thus, the "unlawful employment practice," or hostile work environment, does not typically occur on a single day, and one act of harassment, standing alone, may not be actionable. See id. In response to the nature of hostile work environment sexual harassment claims, courts have developed the "continuing violation doctrine" in order to allow the plaintiff to present the entire period of harassment to the factfinder. This doctrine holds that "provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." Nat'l R.R., 536 U.S. at 117; see also Rush, 113 F.3d at 481; West, 45 F.3d at 754. The continuing

violation doctrine was developed to strike a balance "between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury." West, 45 F.3d at 754 (citing Harris, 510 U.S. at 21).

This test is intended to create both an objective and subjective standard for courts to follow when analyzing sexual harassment claims. (Id.) As such, "[c]onduct that is not severe or pervasive enough to create an *objectively* hostile or abusive work environment — an environment that a reasonable person would find hostile or abusive — is beyond Title VII's purview. Likewise, if the victim does not *subjectively* perceive the environment to be abusive, the conduct has not actually altered the conditions of a victim's employment, and there is no Title VII violation." Id. at 754-55 (emphasis supplied). Finally, in order to invoke the continuing violations theory, and thus circumvent the statutory requirements of Title VII, a plaintiff must show, (1) that at least one occurrence of alleged harassment fell within the 300-day statutory time line; and (2) that the "harassment is 'more than the occurrence of isolated or sporadic acts of intentional discrimination.'" Id. at 755 (quoting Jewette v. Int'l Tel. & Tel. Corp., 652 F.2d 89, 91 (3d Cir. 1981). To that end, a plaintiff must distinguish between "isolated, intermittent acts of discrimination and a persistent, on-going pattern." Id.

In order to establish a "persistent, on-going pattern" of discrimination so as to include acts outside of the limitations period, a plaintiff must show: (1) that the acts in question all constitute the same type of discriminatory conduct; (2) that they occurred frequently; and, (3) the degree of permanence of the harm, *i.e.*, whether

14

the consequences of the acts were permanent enough that they would trigger the plaintiff's awareness of her duty to assert her rights. See Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001). The third factor requires the court to consider the policy underlying the statute. Specifically, "the continuing violation doctrine should not provide a means for relieving plaintiffs from their duty to exercise reasonable diligence in pursuing their claims." Cowell, 263 F.3d at 295.

For purposes of its motion for summary judgment, Kountry Kraft only disputes the third factor — permanence, claiming that Randler should have been aware of her duty to assert her rights at an earlier time. (Doc. 33, at 4). Kountry Kraft claims that because Randler failed to assert her rights at an earlier time, all acts alleged to have occurred prior to February 9, 2009, are time-barred. These acts include: in 2002 or 2003, a Kountry Kraft employee bringing a penis shaped cake to work; in 2005, a co-worker providing Randler with a pair of jeans cut into the shape of a "g-string"; in 2006, co-workers sending emails containing sexual content to Randler's home computer; in 2007, a co-worker showing Randler a pornographic picture on a work computer and subsequently emailing this same picture to her personal email address; in 2008, co-workers asking a "sexual question of the day"; and, in 2008 co-worker Schaeffer giving Randler a mock "write-up" stating her breasts protruded beyond the "pinch point" of a machine. (Doc. 33, at 7-8).

Randler counters that because the conduct at Kountry Kraft was so pervasive and severe, she could not report acts of sexual harassment for fear of losing her job. (Doc. 38, at 7, 8). Randler further avers that the continuing violation

theory is not a stringent standard and plaintiffs "should not be forced to file premature claims." (Doc. 41, at 4). Randler argues that the statute of limitations should be tolled because "the incidents occurred without Defendant's training of its employees to recognize improper conduct and in some instances, certain incidents occurred before she was even provided a policy demonstrating that harassment was improper. As such, from an equitable standpoint, the defendant [sic] should not benefits from its failure to have the requisite policy or training to alert Randler to her rights." (Doc. 41, at 4, 5 (internal citation omitted)).

Clearly, the behavior alleged to have occurred at Kountry Kraft was inappropriate in the context of a professional work environment. However, given the myriad of factual disputes over what actually took place in the work environment, the court is unable to say that, as a matter of law, Randler should have been aware of her duty to assert her rights at an earlier time. See Cowell, *supra*. Indeed, this factual scenario potentially presents a classic example for the application of the continuing violations doctrine. The court notes that there is a low bar for plaintiffs to hurdle when making claims of discrimination. See generally Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Edu., 470 F.3d 535, 536 (3d Cir. 2006). Taking the evidence in the light most favorable to Randler with regard to Kountry Kraft's motion for summary judgment on all claims relating to incidents alleged to have taken place prior to February 9, 2009, the court finds that Randler has come forward with sufficient evidence to establish a hostile work environment and, thus, toll the statute of limitations based on a continuing violation

theory.  Viewed in this light, the working environment at Kountry Kraft was riddled with sexually inappropriate behavior, much of which supervisors were either aware of, or actually participated in.  Furthermore, the alleged acquiescence in the discriminatory conduct, coupled with the purportedly close relationship between management at Kountry Kraft and Kounty Kraft's own president, support Randler's contention that she both feared for her job should she report incidents of sexual harassment, and, that any such reports would have gone unremedied. Randler has a low burden to overcome and it is clear that the atmosphere at Kountry Kraft could be objectively viewed as hostile and offensive.  Hence, the court will deny Kountry Kraft's motion for summary judgment for all incidents occurring prior to February 9, 2009.

Turning to Randler's motion for summary judgment, and viewing the evidence in the light most favorable to Kountry Kraft, the non-moving party, the record is replete with contradictory evidence regarding Randler's behavior and her reactions to certain behavior, including conduct falling squarely within the ambit of her complaint.[9]  (See generally, Doc. 36 ¶¶ 123-128; Doc. 45 ¶¶ 123-128).  For example, the parties dispute the use of Chris Doney's nickname: Randler claims she

---

[9]In its brief in opposition to Randler's motion for summary judgment, Kountry Kraft has submitted a multitude of documents and deposition testimony portraying Randler as the instigator of offensive conduct.  (See Doc. 46, at 11-17). The court need not address this evidence in detail, because the proper assessment of Randler's overall role in the ostensibly Dionysian atmosphere of Kountry Kraft is a matter for the factfinder.  See Marino v. Ind. Crating Co., 358 F.3d 241, 241 (3d Cir. 2004) (stating "[i]n considering a motion for summary judgment a District Court may not make credibility determinations").

was uncomfortable with it, whereas Kountry Kraft cites to deposition testimony indicating that Randler used the nickname both in and outside of work. (Doc. 36 ¶¶ 47-48; Doc. 45 ¶¶ 47-48). The parties dispute who brought in the figurines in the shape of sexual body parts. (Doc. 36 ¶ 62; Doc. 45 ¶ 62). Randler claims it was an unidentified co-worker, while Kountry Kraft cites to testimony from co-workers indicating that Randler not only brought the figurines to work, she also openly displayed them on her workstation. The parties dispute whether Randler told a supervisor about the note allegedly containing pubic hair. (Doc. 36 ¶¶ 65-67; Doc. 45 ¶ 65-67). The parties dispute if there was ever an incident where a plastic penis was glued onto a "Sponge Bob" doll located on Randler's workstation. (Doc. 36 ¶ 68; Doc. 45 ¶ 68). There is also conflicting evidence regarding whether sexually explicit emails and jokes were solicited by Randler, and whether the emails in question involved employee's personal email addresses or Kountry Kraft issued email addresses. (Doc. 36 ¶¶ 73-77; Doc. 45 ¶¶ 73-33). Randler also alleges that another employee at Kountry Kraft reported incidents of sexual harassment and no further

actions was taken, an accusation which Kountry Kraft denies.[10]  (See Doc. 36 ¶¶ 79-

98; Doc. 45 ¶¶ 79-98).

The court is aware of the potential for plaintiffs to "stock-pile" claims until an

adverse employment action is taken, thereafter invoking the continuing violation

theory.  However, in the instant case, the court finds sufficient evidence in the

summary judgment record to support Randler's continuing violation theory.  The

work environment at Kountry Kraft was objectively hostile.  Notwithstanding this

environment, Randler's complicity in the offensive conduct and her subjective

offense to this environment are questions for the trier-of-fact.  See Harris v. Forklift

Systems, Inc., 510 U.S. 17, 21-22 (conduct must be "objectively hostile or abusive"

and the plaintiff must "subjectively perceive" it as such).  Because there are

_____

[10]Kountry Kraft does not dispute that another employee, Michelle Lorah,
reported an incident of sexual harassment.  Kountry Kraft vigorously disputes the
allegation that Lorah's complaint was disregarded.  (Doc. 45 ¶ 78).  It is premature
to rule on whether this testimony would be admissible at trial.  The Third Circuit
has recognized that

> Evidence that women other than the plaintiff were subjected to a
> hostile work environment clearly meets Rule 401's requirements in a
> number of situations. For example, a plaintiff may show that, while she
> was not personally subjected to harassing conduct, her working
> conditions were nevertheless altered as a result of witnessing a
> defendant's hostility towards other women at the workplace.

Hurely v. Atlantic City Police Dep't, 174 F.3d 95, 110 (3d Cir. 1999).  The court also
notes that there is record evidence to suggest that Lorah was satisfied with the
actions taken by Kountry Kraft.  (See Doc. 45 ¶ 91).  Randler may certainly re-raise
this issue at trial, but she is cautioned that the court will not delve into the personal
life of a non-party without further evidence of its relevance.

numerous genuine issues of material fact, the parties' motions for summary

judgment will be denied.

**B.     Supervisory Liability**

Kountry Kraft, in their answer to Randler's complaint, assert the affirmative

defense of supervisory liability.  Without filing a motion to strike, Randler, in her

brief in support of her motion for summary judgment, requests that the court

preclude Kountry Kraft from presenting evidence to support this affirmative

defense to liability.  (Doc. 38, at 7).

To be sure, "'Title VII does not make employers always automatically liable

for sexual harassment by their supervisors[.]'"  Fornicoia v. Haemonetics Corp., 131

Fed. App'x 867, 870 (3d Cir. 2005) (citing Faragher v. City of Boca Raton, 524 U.S.

775, 792 (1998)).  Instead, "[a]n employer is subject to vicarious liability to a

victimized employee for an actionable hostile environment created by a supervisor

with immediate (or successively higher) authority over the employee."  Id. (citing

Faragher, 524 U.S. at 807-08).  When no tangible employment action is taken, an

employer may avoid liability if it can prove: "(a) that the employer exercised

reasonable care to prevent and correct promptly any sexually harassing behavior,

and (b) that the plaintiff employee unreasonably failed to take advantage of any

preventive or corrective opportunities provided by the employer or to avoid harm

otherwise."  Id. at 871.

In the case *sub judice*, a determination of the adequacy of Kountry Kraft's

employee handbook — outlining its policy on sexual harassment — requires the

resolution of disputed issues of material fact. Hence, the determination is a matter for the jury.[11] Cf. Andreoli v. Gates, 482 F.3d 641, 644 (3d Cir. 2007) (holding that for co-worker liability, jury should decide if employers remedial response to complaints of harassment were adequate). For example, the parties dispute the amount of harassment-prevention training provided to supervisors. Kountry Kraft provided *some* sexual harassment training to supervisors, (see Doc. 36 ¶ 131), but the parties dispute the adequacy of the training, (Doc. 36 ¶ 132; Doc. 45 ¶ 132). The parties also dispute whether Kountry Kraft supervisors were vigilantly following the company protocol when presented with complaints of sexual harassment. (Doc. 36 ¶ 138; Doc. 45 ¶ 132). Randler asserts that supervisor John Strickler was well aware of the alleged "sexual question of the day," but took no remedial action. (Doc. 36 ¶ 140). Apparently, Kountry Kraft does not dispute Strickler's familiarity with the "question of the day," however, Kountry Kraft claims that Randler participated in posing such questions to her supervisors and co-workers. (Doc. 36 ¶ 140; Doc. 45 ¶ 140).

---

[11]Kountry Kraft interprets Randler's argument to be that she has, as a matter of law, established *respondeat superior* liability. If this is, in fact, Randler's contention, the motion will likewise be denied. Randler will be required to establish each element of her Title VII claim before a jury and the court will not say, as a matter of law, that Randler has established *respondeat superior* liability or that Kountry Kraft is precluded from defending itself in this regard. Randler's briefing is less than clear on this matter, (see Doc. 38, Part B), however, the court has endeavored to address all relevant arguments pertaining to the disposition of the summary judgment motions.

The parties also dispute whether Randler appropriately availed herself of the "preventative or corrective" remedies provided by Kountry Kraft. Randler claims that she complained to Kountry Kraft supervisors after the "g-string" incident, the mock "write-up," and the loathsome gag regarding pubic hair. Kountry Kraft disputes Randler's communication to management regarding these incidents. Obviously, there are genuine issues of material fact surrounding Kountry Kraft's training, management's response to complaints, and whether Randler properly invoked or properly attempted to invoke Kountry Kraft's corrective remedies. As such, Randler's request for an order precluding Kountry Kraft from asserting this affirmative defense at trial will be denied.

### C. <u>Retaliation</u>

Both parties request summary judgment on Randler's retaliation claim. Title VII forbids employers from retaliating against employees who oppose any practice held unlawful under the statute. <u>See</u> 42 U.S.C. § 2000e-(3). Randler claims she was retaliated against in two ways. First, she asserts that she was laid-off because of a personal dispute with a fellow Kountry Kraft employee, Kelly Kellenberger, who is married to a supervisor at Kountry Kraft. Ergo, Randler was laid-off because of favoritism towards the spouse of a Kountry Kraft supervisor. Second, Randler argues that she was laid-off in retaliation for her complaints about sexual harassment.

Courts analyze Title VII retaliation claims utilizing a burden-shifting framework. <u>Moore v. Grove North America, Inc.</u>, 927 F.Supp. 824, 830-31 (M.D. Pa. 1996). First, plaintiff must prove a *prima facie* case of retaliation by satisfying the following elements: 1) [she] engaged in conduct protected under Title VII; 2) the employer took adverse action; and 3) a causal link exists between the protected conduct and the employer's adverse action. <u>Kachmar v. SunGard Data Sys., Inc.</u>, 109 F.3d 173, 177 (3d Cir. 1997); <u>Charlton v. Paramus Bd. of Edu.</u>, 25 F.3d 194, 201 (3d Cir. 1994); <u>Williams v. Pa. State Police - Bur. of Liquor Control Enforcement</u>, 108 F.Supp.2d 460, 465 (E.D. Pa. 2000).

If the plaintiff succeeds in establishing a *prima facie* case, the burden shifts to the defendant, who must proffer a legitimate, nondiscriminatory reason for the adverse employment decision. <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981); <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973); <u>Moore</u>, 927 F.Supp. at 831. If defendant articulates a legitimate reason, the burden shifts back to plaintiff, who must prove that the proffered reason is mere pretext for discrimination. <u>See</u> <u>id.</u>

As a threshold matter, Kountry Kraft argues that part of Randler's retaliation claim is based upon conduct that is not a protected activity under Title VII, namely, her personal dispute with Kellenberger. (Doc. 46, at 23). The court agrees. "Not every complaint or report entitles its author to protections from retaliation under Title VII." <u>Davis v. City of Newark</u>, 417 Fed. App'x 201, 202 (3d Cir. 2011) (citing <u>Burlington N. & Santa Fe Ry.</u>, 548 U.S. 53, 68 (2006) (Title VII does not "set forth a

general civility code for the American workplace"). Rather, a plaintiff must establish that their complaint was based on a protection secured by Title VII, *scilicet*, race, color, religion, sex, or national origin. See Davis, *supra*; 42 U.S.C. § 2000e-2. Complaints must amount to a "protected activity" and "[g]eneral complaints of unfair treatment will not suffice." Davis, *supra* (referencing Barber v. CSX Distrib. Servs., 68 F.3d 692, 701-02 (3d Cir. 1995)). A personality dispute with a fellow employee that does not involve animus based on a protection secured by Title VII is not a protected activity.

To salvage this aspect of her retaliation claim, Randler claims that Kountry Kraft treated her differently and that this disparate treatment constitutes a violation of the company's policy regarding the hiring of relatives. (See Def.'s Ex. 3, Kountry Kraft's Employee Handbook, Section 105 Hiring of Relatives). These allegations, even if adequately supported, do not establish a Title VII claim.[12] Randler beseeches the court to find evidence of disparate treatment, claiming that Kountry Kraft "did not terminate persons who admittedly sexually harassed others,

---

[12]The record is devoid of evidence that Kountry Kraft violated Section 105, which merely provides notice that Kountry Kraft is "committed to monitoring situations in which such relationships exist in the same area [and] [i]n case of actual or potential problems, Kountry Kraft will take prompt action. This can include reassignment or, if necessary, termination of employment for one or both individuals involved." (Def.'s Ex. 3, Kountry Kraft's Employee Handbook, Section 105 Hiring of Relatives). Kellenberger and her husband worked in separate departments. Kellenberger's husband did not work in the same department as Randler. Kountry Kraft assigned Randler and Kellenberger to alternating shifts soon after the conflict arose. Even assuming, *arguendo* that Kountry Kraft fired Randler because of favoritism, Randler has failed to show it was because of sex; favoritism is not a protection afforded by Title VII.

it did not discipline employees for bringing penis cakes to work and did not investigate or interview any employees concerning Randler's complaints regarding Kellenberger." (Doc. 41, at 7). This is a misstatement of undisputed facts of record. The only aspect of the record which involves the harassment of another individual is a brief mention of Michelle Lorah, who testified her complaints were addressed to her satisfaction. (Doc. 45, ¶ 91). There is no evidence that Kountry Kraft supervisors were apprised of any claims of other workers. Further, Randler's claim (Doc. 36 ¶¶ 102-03) that Kountry Kraft failed to investigate her personal issues with Kellenberger contradicts her own testimony and her statement of material facts wherein she specifically references her meeting with supervisors to address the continuing discord between the two employees. (Doc. 42 ¶ 33; Pl.'s Ex. A, at 143:15-144:22). Rander's general accusations, which are unsubstantiated by the record, will not support a Title VII retaliation claim.

To the extent Randler argues that she was laid-off due to her complaints of sexual harassment, Randler has obviously engaged in a protected activity under Title VII. Kountry Kraft concedes as much, but argues Randler has not established the requisite causal connection between her complaint and her termination. (See Doc. 46, at 23-24). As the Third Circuit has explained,

> Where the temporal proximity between the protected activity and the adverse action is "unusually suggestive," it is sufficient standing alone to create an inference of causality and defeat summary judgment. Where the temporal proximity is not "unusually suggestive," we ask whether "the proffered evidence, looked at as a whole, may suffice to raise the inference." Among the kinds of evidence that a plaintiff can

> proffer are intervening antagonism or retaliatory animus,
> inconsistencies in the employer's articulated reasons for terminating
> the employee, or any other evidence in the record sufficient to support
> the inference of retaliatory animus.

LeBoon v. Lancaster Jewish Cmty. Center Ass'n, 503 F.3d 217, 232-33 (3d Cir. 2007).

In LeBoon, the court ultimately held that a gap of three months between the

protected activity and the adverse action was insufficient to establish the requisite

causal connection.

In the case *sub judice*, Randler's last complaint was lodged in June 2009,

when she purportedly informed a supervisor about the Obama note. Kountry

Kraft's adverse action — the lay-off — was taken nearly eight month later. This

chronology is insufficient to establish a direct causal connection. See LeBoon,

*supra*; Moore v. Shinseki, No. 11-4234, 2012 WL 2550479, at *1 (3d Cir. 2012) (two

month time gap insufficient); Rearick v. Pa. State Univ., No. 1:08-cv-1195, 2010 WL

2521028, at * 4 (M.D. Pa. 2010) (six month time gap insufficient).

Temporal proximity alone is insufficient in this case, therefore, the court

must determine whether there is sufficient evidence in the record to establish that

Randler's complaints caused her termination. The record does not support such a

conclusion. Indeed, the record is devoid of any intervening antagonism by Kountry

Kraft or its employees. After Randler allegedly spoke to a supervisor about the

Obama note, the last incident she reported, the working environment at Kountry

Kraft continued as usual. The jokes and remarks were not markedly different from

the incidents Randler experienced prior to her alleged complaint. (See Doc. 33, at

4-5 (chart outlining incidents of alleged sexual harassment during Randler's

employment with Kountry Kraft)); <u>LeBoon</u>, 503 F.3d at 234 (nothing in the record

shows a "qualitatively different relationship" prior to the complaint and subsequent

to the complaint before the employer engaged in the adverse employment action).

Consequently, Randler has failed to establish sufficient facts to show a causal

connection between her complaint of sexual harassment and her ultimate

termination.  Summary judgment will be granted in favor of Kountry Kraft on this

claim.

### D.    **Wrongful Discharge**

Randler brings a claim for wrongful discharge alleging that "the at will [sic]

employment presumption can be overcome by demonstrating that an employer

violated a policy in its handbook."  (Doc. 41, at 8 (citing this court's October 4, 2011

Memorandum & Order)).  As this court previously stated when addressing Kountry

Kraft's motion to dismiss:

> Pennsylvania adheres to the employment at-will doctrine, allowing
> employers to terminate employees "for any reason or for no reason"
> unless a written contract exists between the parties. <u>Shick v. Shirey</u>,
> 552 Pa. 590, 716 A.2d 1231, 1233 (Pa. 1998) (citation and quotations
> omitted); <u>Hershberger v. Jersey Shore Steel Co.</u>, 394 Pa. Super. 363,
> 575 A.2d 944, 946 (Pa. Super. Ct.1990) ("at-will employment
> environment is the norm ... thus, an employee can be terminated for
> good reason, bad reason, or no reason at all" (citing <u>Henry v.
> Pittsburgh & Lake Erie R.R. Co.</u>, 139 Pa. 289, 21 A. 157 (Pa. 1891))).
>
> *       *       *

> An employee handbook can be used to overcome the presumption if a
> reasonable person in the employee's position would interpret the
> handbook as "evidencing the employer's intent to supplant the at-will
> rule." Scott v. Extracorporeal, Inc., 376 Pa. Super. 90, 545 A.2d 334,
> 337 (Pa. Super Ct. 1988) (citation and quotations omitted).

Randler v. Kountry Kraft, Inc., Civ. No. 1:11-474, 2011 WL 5040787, at *4 (M.D. Pa.

2011). Subsequent to this court's decision, the Pennsylvania Superior Court in

Braun v. Wal-Mart Stores, Inc., 24 A.3d 875, 940 (Pa. Super. Ct. 2011), adopted a

rule espoused by the Eastern District of Pennsylvania regarding the treatment of

employee handbooks. There the court concluded:

> An employment handbook is enforceable against an employer if a
> reasonable person in the employee's position would interpret its
> provisions as evidencing the employer's intent to supplant the at-will
> rule and be bound legally by its representations in the handbook. *The
> handbook must contain a clear indication that the employer intended to
> overcome the at-will presumption.* The court may not presume that the
> employer intended to be bound legally by distributing the handbook
> nor that the employee believed that the handbook was a legally
> binding instrument.

> Notwithstanding this, provisions in a handbook or manual can
> constitute a unilateral offer of employment which the employee
> accepts by the continuing performance of his or her duties. A
> unilateral contract is a contract wherein one party makes a promissory
> offer which calls for the other party to accept by rendering a
> performance. In the employment context, the communication to
> employees of certain rights, policies and procedures may constitute an
> offer of an employment contract with those terms. The employee
> signifies acceptance of the terms and conditions by continuing to
> perform the duties of his or her job; no additional or special
> consideration is required. Thus, the provisions comprising the
> unilateral contract may be viewed as "a contract incidental or
> collateral to at-will employment." An employer who offers various
> rewards to employees who achieve a particular result or work a certain
> amount of overtime, for example, may be obligated to provide those

awards to qualifying employees, although retaining the right to
terminate them for any or no reason.

Caucci v. Prison Health Servs. Inc., 153 F. Supp. 2d 605, 611 (E.D.Pa. 2001) (internal

citations omitted) (emphasis supplied). The standard to be applied when deciding if

a handbook creates a unilateral contract which trumps the at-will employment

presumption is that of "a reasonable person in the employee's position." See Engle

v. Milton Hershey Sch., No. 1:06-CV-0109, 2007 WL 1365916, at *8 (M.D.Pa. 2007).

However, an "'an explicit disclaimer of the formation of a contract nullifies

plaintiff's claim for breach of contract.'" Id. (citing Landmesser v. United Air Lines

Inc., 102 F. Supp. 2d 273, 280 (E.D. Pa. 2000).

In the instant matter, there is no evidence of the formation of a unilateral

contract. The handbook explicitly states: the "[p]olicies set forth in this handbook

are not intended to create a contract, nor are they to be construed to constitute

contractual obligations of any kind or a contract of employment between Kountry

Kraft and any of its employees." (Def.'s Ex. 35). Furthermore, the acknowledgment

form Randler signed states, "I have entered into my employment relationship with

Kountry Kraft voluntarily and acknowledge that there is no specified length of

employment. Accordingly, either I or Kountry Kraft can terminate the relationship

at will. [] Since the information, policies, and benefits described here are

necessarily subject to change, I acknowledge that revisions to the handbook may

occur, *except to Kountry Kraft's policy of employment-at-will*." (Def.'s Ex. 3)

(emphasis supplied). Although this provision alone could be the death-knell to

Randler's argument, Kountry Kraft also made no promises which Randler implicitly accepted by continuing to work at the company. Kountry Kraft did not promise any rewards for employees who achieved a particular result or fulfilled a particular requirement. Accordingly, summary judgment will be granted on Randler's wrongful discharge claim.

###  E.    Negligent Supervision

Randler argues that she should be entitled summary judgment on her negligent supervision claim because Kountry Kraft failed to properly train its employees with regard to sexual harassment. (Doc. 38, at 11). The court will not delve into the merits of this argument, as it is firmly established that negligent supervision claims arising out of discrimination cases situated in the Commonwealth of Pennsylvania must be brought under the Pennsylvania Human Relations Act ("PHRA"). See Stell v. PMC Technologies, Inc., No.Civ.A. 04-5739, 2005 WL 2050297, at *3 (E.D. Pa. 2005) ("The Court finds that the claim which Plaintiff is making it a discrimination claim, and therefore, it must be brought under the PHRA.") (referencing McGovern v. Jack D's, No.Civ.A. 03-5547, 2004 WL 228667 (E.D. Pa. 2004) (stating that the "weight of authority cuts in favor of the [PHRA] preemption with regard to negligent supervision claims.")) As the Stell court opined: "Plaintiff characterizes her negligence claim as based on a theory of negligent supervision. Plaintiff has failed to show that any Pennsylvania court, or the Third Circuit, has adopted such a theory when the underlying claim is

discrimination arising in an employment context." Id. at *3.  Moreover, the court notes that Randler has failed to come forward with any independent set of facts upon which to base her negligent supervision claim outside of those used to support her sexual harassment claims.  See Hainan v. S&T Bank, Civ. Action No. 10-1600, 2011 WL 1628042, at *2 (W.D. Pa. 2011) ("The PHRA preempts any common law actions, including harassment and willful misconduct, which allege facts associated with a prohibited form of discrimination"); see also Keck v. Commercial Union Ins. Co., 758 F. Supp. 1034, 1039 (M.D. Pa. 1991).  Randler's failure to invoke her rights under the PHRA does not allow her to circumvent its statutory framework and, thus, bring a common law tort cause of action.  See Wolk v. Saks Fifth Ave. Inc., 728 F.2d 221, 224 (3d Cir. 1984) ("The procedures mandated in the PHRA must be strictly followed.  If a common law action for the same claims were recognized, it would give the claimant an opportunity to circumvent the carefully drafted legislative procedures.  The PHRA embodies a discrete, comprehensive administrative procedure, including conciliation and negotiation." (internal punctuation omitted) citing Fye v. Cent. Transp. Inc., 487 Pa. 137, 140-41 (1979)).  Therefore, summary judgment will be granted for Kountry Kraft on Randler's negligent supervision claim.

## F.    **Motion to Strike**

Randler asks the court to strike the testimony of Tonya Sholl and to strike

the portions of Kountry Kraft's reply brief that rely on Sholl's deposition testimony.

This motion will be denied.  Ms. Sholl's deposition testimony relates primarily to

Randler's workplace conduct, including evidence that Randler participated in

sexually suggestive behavior while employed at Kountry Kraft.  Randler claims this

evidence should be excluded under Federal Rule of Civil Procedure 403 because its

probative value is outweighed by the potential for prejudice.  See Fed. R. Evid. 403.

This argument is premature.  Randler is not precluded from renewing her

objections at trial.  However, the court notes that this evidence is clearly relevant,

and likely admissible, see Fed. R. Evid. 402, as it pertains directly to many of the

questions surrounding the working environment at Kountry Kraft and whether

Randler was subjectively offended by this environment.[13]  See West 45 F.3d at 754

(stating that conduct must be both "objectively hostile and abusive" and the victim

must "subjectively perceive" it as such.)

The record is replete with factual disputes regarding working conditions at

Kountry Kraft and managements' knowledge and acquiescence in the alleged

inappropriate conduct.  Randler is free to renew her objections at trial, but the

_____

[13]At this juncture, the court does not find it necessary to consider Sholl's
testimony as it relates to Randler's conduct *outside* the workplace.

court will not prophylactically exclude it at this time.  As such, the motion will be denied.

**IV.**   **Conclusion**

For the reasons set forth above, Kountry Kraft's motion for partial summary judgment will be granted in part and denied in part.  Randler's motion for summary judgment and motion to strike will both be denied.



      S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:      December 17, 2012

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**


**ROBIN RANDLER,**           **:**      **Civil Action No. 1:11-cv-0474**
    **Plaintiff,**         **:**
                         **:**      **(Judge Conner)**
    **v.**                   **:**
                         **:**
**KOUNTRY KRAFT KITCHENS,**    **:**
    **Defendant**         **:**
                         **:**

## <u>ORDER</u>

AND NOW, this 17th day of December, 2012, upon consideration of

defendant Kountry Kraft Kitchens' partial motion for summary judgment (Doc. 32)

and plaintiff Robin Randler's motion for summary judgment (Doc. 37) and

Randler's motion to strike (Doc. 48), and for the reasons set forth in the

accompanying memorandum, it is hereby ORDERED that:

    1.    Kountry Kraft's partial motion for summary judgment (Doc. 32) is
        GRANTED in part and DENIED in part.  <u>See</u> Fed. R. Civ. P. 56(c).

        a.    The motion is GRANTED with respect to Randler's claims for
            retaliation (Count II) and wrongful discharge (Count V).

        b.    The motion is DENIED with respect to the statute of limitations,
            Randler will be permitted to present evidence of alleged acts of
            misconduct which occurred prior to February 9, 2009.

    2.    Randler's negligent supervision claim (Count III) is dismissed as
        preempted by the Pennsylvania Human Relations Act, 43 Pa. Cons.
        Stat. § 951.

3.      Randler's motion for summary judgment (Doc. 37) is DENIED.

4.      Randler's motion to strike (Doc. 48) is DENIED.

5.      A revised pretrial and trial schedule shall issue by future order of the court.


   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge